Mark L. Javitch (CA SBN 323729)
Javitch Law Office
480 S. Ellsworth Ave
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
mark@javitchlawoffice.com
*Attorney for Plaintiff*
*and the Putative Classes*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **John Galgon, individually and on behalf of all others similarly situated,** | Case No.: _____ |
| **Plaintiff,** | **CLASS ACTION COMPLAINT** |
| **v.** | **DEMAND FOR JURY TRIAL** |
| **Epson America, Inc., a California corporation,** | |
| **Defendant**. | |

Plaintiff John Galgon ("Galgon" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Epson America, Inc. ("Epson" or "Defendant") and makes the following allegations based on personal knowledge as to facts pertaining to his own experiences and on information and belief as to all others:

## NATURE OF THE ACTION

1.      Epson wrongfully compels users of its printers to buy and use only Epson ink and toner supplies by transmitting firmware updates without authorization to Epson printers over the Internet that lock out its competitors' ink and toner supply cartridges. Epson's firmware "updates" act as malware—adding, deleting or altering code, diminishing the capabilities of Epson printers, and rendering its competitors' supply cartridges incompatible with Epson printers. As a result, and by Epson's design, Plaintiff and Class members who reasonably and lawfully buy competitors' much less costly and equally effective ink and toner supplies are left with useless printers and unusable supply cartridges.

2.      Epson's malware transmissions are unsolicited. Epson foists the firmware update to users under the guise of repeated pop-up messages asking users to update their firmware.

3.      But the firmware update, or the portion of the firmware update that renders third-party ink and toner incompatible with Epson printers, serves no legitimate business purpose. Epson provides no proof that these purported updates actually provide any enhanced security measures. If consumers were actually given the choice to decide between the enhanced security updates and not being able to use their cartridges suddenly and without warning, they would choose to continue to use their cartridges.

4.      Even if some portion of the transmission had some arguable security or quality benefit, the secretive, automatic, and misleading manner in which the firmware updates are carried out unlawfully deprive Plaintiff and the Class of the fully informed choice of either

choosing to accept the firmware update and the represented benefits accompanying it, or to decline the update and receive the benefits of using ink or toner of their choice.

5.     As a result of Epson's malware, Epson printer owners who lawfully use significantly less expensive ink or toner purchased from third parties are forced to buy Epson cartridges, which Epson sells at substantial premiums, or they are deprived of the use of their printers. Epson harms competition because it deprives its printer users of the choice whether to purchase more expensive Epson supplies or the less expensive supplies of lawful competitors.

6.     Even though Epson sells ink and toner at substantial premiums over its competitors, Epson is able to maintain its market share in the Epson printer-compatible ink and toner supply markets only because it has the exclusive ability to install firmware updates to the printers it sells that are connected to the Internet.

7.     In furtherance of the unlawful scheme, Epson falsely represents and omits material facts regarding the reason for the sudden inability of its printers to function without Epson ink and toner. Epson printers using third-party ink and toner cartridges display an error message stating that the printer had a "supply problem." In fact, there was no supply problem until Epson intentionally caused one by sending malware to its printers to render third-party supplies incompatible with its products.

8.     The incompatibility was not an unintended consequence of Epson pursuing or implementing legitimate business interests or conducting lawful quality assurance, security updates, or product improvements. The incompatibility was the point of the firmware update, or the portion of the firmware update that caused the incompatibility to prevent its printers from working with competitors' products. Third-party supplies are not collateral damage; they are the target.

9.     Due to the transmission and by Epson's design, Plaintiff's and Class members' Class Printers and supply cartridges were rendered incompatible and inoperable. Plaintiff would not have purchased an Epson printer had he known Epson was engaged in and would engage in such conduct. As a direct and proximate result of Epson's misconduct,

Plaintiff and Class members sustained damages, including but not limited to the loss of the value of the supply cartridges they purchased that are no longer compatible with their printers, loss of time and effort to diagnose the damage to their printers and to determine what remedial measures to take, the need to purchase expensive Epson supply cartridges, uncertainty in the functioning of their printers and supply cartridges, and future remedial costs.

10.     Epson's malware transmission and false statements injured and will continue to injure its customers. Epson's conduct is unlawful under federal and state laws prohibiting hacking and other computer crimes, state statutory prohibitions against deceptive and unfair trade practices, and trespass to chattels.

11.     Plaintiff therefore seeks actual, statutory, and exemplary damages, restitution, and an injunction requiring Epson to reverse the effects of its malware transmissions insofar as they render once-compatible ink and toner cartridges obsolete, and prohibiting Epson from sending such transmissions in the future without obtaining the fully informed consent of each printer owner.

## PARTIES

12.     Plaintiff John Galgon is an individual residing in Chester County, Pennsylvania.

13.     Defendant Epson America, Inc. is a California corporation with its principal place of business located at 3840 Kilroy Airport Way, Long Beach, California, 90806. Epson America, Inc. is the sales arm of Seiko Epson Corporation, a Japanese multinational conglomerate.

14.     Epson's registered agent is Corporation Service Company, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

## JURISDICTION AND VENUE

15.     This Court has original subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"). The Court has supplemental jurisdiction over Plaintiff's state and common law claims

**CLASS ACTION COMPLAINT**

under 28 U.S.C. § 1367(a). Alternatively, the Court has original subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1332(d), because the case is brought as a class action pursuant to Fed. R. Civ. P. 23, there are 100 or more members of the proposed Class, the amount in controversy exceeds $5,000,000, exclusive of costs, and Plaintiff and Defendant are diverse parties.

16.    This Court has general personal jurisdiction over Epson because Epson's headquarters and principal place of business are located in Long Beach, California.

17.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because Epson resides in this District.

## COMMON FACTUAL ALLEGATIONS

18.    Epson is one of the largest sellers of home and office printers in the United States. Epson also sells associated supply cartridges for its printers. Epson's printer business is one of its major global businesses.[1]

19.    Epson employs a "razor and blades" business model, where the printer is sold at a loss with the intent on profiting on the sales of consumable supplies like toner and ink over the lifetime of the printer. Under this model, the overall long term cost of owning and operating an Epson printer compared to its competitors in the market for printers is opaque for the customer at the point of sale.[2]

20.    Epson's revenue in its printing solutions business in its fiscal year 2019 was $6.5 billion.[3] Epson's revenue in printing solutions accounts for about two-thirds of

---

[1] *See* 2020 Annual Report, Seiko Epson Corporation, at 5. *Major Epson Group Companies*. https://global.epson.com/IR/library/pdf/ar2020.pdf?87 (last accessed Feb. 8, 2021).

[2] *See* Anirudh Dhebar, "Innovating Around the Classic Razor-And-Blades Pricing Model" *Babson College*, April 2017. https://www.babson.edu/academics/executive-education/babson-insight/strategy-and-innovation/razor-and-blades-pricing-model/# (last accessed Feb. 25, 2021).

[3] *See* 2020 Annual Report, Seiko Epson Corporation. at 82. *Consolidated Financial Statements (Continued)*. https://global.epson.com/IR/library/pdf/ar2020.pdf?87 (last accessed Feb. 8, 2021).

Epson's entire revenue.[4]  Inkjet printers and toner, such as the ones at issue in this case, account for the large majority of Epson's revenue and profit.[5]

21.    Epson depends on its extremely high-priced, recurring supply cartridge sales as the lifeblood of its business. Indeed, commentators have remarked that the price of ink and toner range between the prices of silver and gold (at $12,000 per gallon) and put consumers in a paradoxical situation, as they are more expensive than merely buying a new printer.[6]

22.    A study of one of Epson's home inkjet printers conducted by a consumer group in the U.K. found that Epson's ink was priced higher than 32-year old Scotch whisky, Chanel No. 5 perfume, and high end champagne.[7]

23.    The study also found that "cheaper options" of "similar quality," like the ones consumers were prohibited from using by virtue of the events in this lawsuit, could have resulted in an ***eighty-five percent*** (85%) savings of approximately $565 in a twelve (12) month period (out of the $660 required to operate the printer at moderate use). And this is to say nothing of the excessive shrinkflation Epson supplies have undergone in recent years, which contributes to the value disparity.[8]  Accordingly, Epson admits in its annual report that it intends to keep its prices high, as its operating results could be adversely affected if it had to lower the prices of Epson brand products.

---

[4] *Id*. at 13.

[5] *Id*.

[6] *See* Jack Houston & Irene Anna Kim, "Why printer ink is so expensive," *Business Insider*. https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 (last accessed Feb. 8, 2021).

[7] *See* Michael Cogley, "Printer ink more expensive than Chanel No. 5 and champagne, says new study", *The Telegraph*, July 25, 2020. https://www.telegraph.co.uk/technology/2020/07/25/printer-ink-expensive-chanel-no5-champagne-says-new-study/ (last accessed Feb. 8, 2021).

[8] *See* David Robinson, Printer ink cartridges: why you're paying more but getting a lot less, *The Guardian*, February 23, 2013. https://www.theguardian.com/money/2013/feb/23/printer-ink-cartridges-paying-more-getting-less (last accessed Feb. 8, 2021).

24.     The critical component of a successful razor and blades business model is that the market for the consumable must be closed to competitors. If consumers can purchase blades from anyone else, then the model fails.

25.     As a result, Epson fears competition in its printing solutions business from what it refers to as "sales of third-party inkjet printer consumables…who also supply ink cartridges and other inkjet printer consumables that can be used in Epson printers.  These alternative products are typically sold for less than genuine Epson brand consumables and are more prevalent in emerging markets compared to the markets of developed countries."[9]

26.     Epson has warned that "our operating results, etc. could be adversely affected" if there is "an expansion of sales of third-party alternative products and drop of the market share of genuine Epson products, or if we must lower the prices of Epson brand products to stay competitive[.]"[10]

27.     Competitors in the supplies market have continually eaten into the market share for Epson-compatible ink and toner supply cartridges. As Epson states in its 2019 annual report: "These alternative products are typically sold for less than genuine Epson brand consumables[.]"

28.     "Revenue in the printing solutions segment was 708.6 billion yen, down 2.1% year on year. Segment profit was down 20% year on year," despite a sales boost from the pandemic causing a greater need to print from home.[11]

29.     To reverse its decline in supplies revenue, Epson resorted to suppressing competition for its Epson-branded ink and toner supply cartridges by sending malware to

_____

[9] *See See* 2020 Annual Report, Seiko Epson Corporation, at 14. *Risks Related to Epson's Business Operations (Continued)*. https://global.epson.com/IR/library/pdf/ar2020.pdf?87 (last accessed Feb. 8, 2021).

[10] *Id*.

[11] *Id*. at 20.

its customers' printers, causing a malfunction to its printers equipped with competitors' supply cartridges.

30.    In or around October 2019, Epson caused to be transmitted a firmware update containing malware designed to lock out then-compatible third-party supply cartridges. Epson wrote, designed, and transmitted the firmware or a portion thereof solely for the purpose of disabling third-party supply cartridges, which were successfully competing with its supplies business.

31.    The malware caused damage to Plaintiff's and Class members' printers. Epson's conduct was unilateral, unsolicited, misleading, and deceptive. Epson did not seek consent from, advise, or explain the malware or the update to Plaintiff and Class members. Epson simply prompted the user for a routine firmware update and then transmitted the malware. Plaintiff and Class members only authorized a purportedly needed security enhancement and did not authorize Epson to cause damage to their printers.

32.    In addition, Epson made misrepresentations and omissions of material fact regarding the firmware update. At the point of sale, Epson omitted material facts concerning its well-conceived business plan to periodically disallow competing supplies. After Epson transmitted the updates, Epson made false statements to conceal its role and the nature of the update. Epson caused a message to be displayed claiming that the printer could not recognize the ink cartridges when a competitor's supply cartridge was installed. Epson did not attribute the problem to a firmware update, malware transmission, or other conduct on its part.

33.    The error message that the printers displayed intentionally misrepresented the cause of the printer issue, suggesting that the third-party supply cartridges were broken when, instead, the transmission simply disabled the supply cartridges that had previously functioned satisfactorily and would have continued to function but for Epson's transmission of the update.

34.    Epson should have implemented reasonable, legal and ethical alternatives. Epson should have played fairly in the marketplace using traditional methods, using

persuasion and other legitimate sales tactics to convince Plaintiff and the Class to choose to buy Epson branded supply cartridges. Epson should have emphasized quality, value, customer service, or other benefits, rather than secretly causing printers that were not contributing to Epson's supplies revenue to malfunction. Epson should have provided its customers with the opportunity to make a fully informed decision regarding whether to install the firmware update or continue using third-party supplies.

## THE CLASS PRINTERS

35.    Epson's malicious transmissions affected many models of Epson printers, as well as the corresponding third-party ink and toner supply cartridges that were in the printers or were already purchased by Plaintiff and Class members at the time the update was transmitted or activated.

36.    Upon information and belief, the Class Printers comprise Epson Inkjet and Laser Printers, in the following non-exhaustive list of products and product series: Epson XP-440, XP-640, WF-4734, and all other models affected by Epson's malware transmissions in the way described herein ("Class Printers").

## FACTS SPECIFIC TO JOHN GALGON

37.    On January 25, 2018, Plaintiff purchased an Epson XP-640 Expression Premium Wireless Color Photo Printer with Scanner & Copier ("XP-640") on Amazon.com for $69.99, and an additional set of five Epson cartridges for $73.29.

38.    In addition to the extra set of cartridges that Plaintiff purchased, the printer also came packaged with an initial set of Epson-brand model T410 inkjet cartridges.

39.    Had Plaintiff been informed that Epson would intentionally transmit firmware updates to the printer designed to render the printer incompatible with non-Epson supplies, Plaintiff would not have purchased the printer.

40.    Plaintiff purchased and used his printer for personal printing.

41.    When Plaintiff's initial set and extra set of Epson-brand model T410 inkjet cartridges were exhausted, Plaintiff did not purchase additional supply cartridges from Epson. Instead, on March 30, 2018, Plaintiff purchased a set of high capacity model

T410XL Valuetoner remanufactured supply cartridges from Amazon.com for $32.99, because they were truthfully advertised at the time as being compatible with the Epson printer. The Valuetoner set included five high capacity or "XL" cartridges and was environmentally friendly, being "remanufactured." The model T410XL Valuetoner cartridges were compatible with the printer and Plaintiff was satisfied with the quality of the printer's output.

42.    In or around October 2019, Epson sent or activated an unsolicited and malicious transmission to the printers of Plaintiff and the Class falsely purporting to be a benign firmware update. The transmission altered the code and data of the Class Printers and rendered the printers incompatible with third-party inkjet supply cartridges, including the Valuetoner cartridges purchased by Plaintiff.

43.    Prior to the transmission, Epson did not warn, advise, or explain to Plaintiff or the Class members of the malicious effects of the transmission and allow an opportunity to decline the update. Plaintiff only discovered the effects of the malware transmission when Plaintiff attempted to print a document, but an error message was displayed saying that Plaintiff's cartridges could not be recognized.

44.    After Epson's transmission, Plaintiff's once functional printer ceased printing.

45.    To check for a solution, Plaintiff searched Epson's website, but could find only a recommendation to replace the cartridge with an Epson-branded cartridge.

46.    As a consequence of Epson's intentional conduct, Plaintiff's printer and supply cartridges were disabled. The Valuetoner remanufactured cartridges he purchased are now useless. Plaintiff was effectively forced to purchase Epson ink if he wanted to resume using his printer. With no other reasonable alternative, Plaintiff bought a set of five Epson brand model T410 cartridges (unlike the Valuetoner cartridges, in the Epson set, four out of five cartridges were "standard" and not "high capacity") from Amazon.com on November 6, 2019 for $77.65. These "standard" capacity cartridges did not last very long, and thus Plaintiff also had to purchase this same Epson five-cartridge set again on September 1, 2020 for $73.29, and again on January 31, 2021 for $73.27.  He also had to

purchase an Epson-brand model T410XL high capacity Photo Black cartridge, which he purchased for $20.13 on June 28, 2020.  Thus, Plaintiff was forced to spend $244.34 on Epson brand-ink just to keep his printer operating.

47.    Had Plaintiff known that Epson was engaged in and would engage in the unlawful, deceptive, and unfair conduct as described herein, he would not have purchased an Epson printer. As a result of Epson's unlawful conduct, Plaintiff has and will continue to suffer injury in fact and sustain losses in paying for Epson supply cartridges he would not have bought had he known the truth, losing the value of third-party supply cartridges rendered useless as a result of Epson's conduct, decreasing the value of the printer, and incurring additional losses and injuries, such as being forced to buy overpriced replacement supplies from Epson, and other consequential damages relating to loss of use of the Epson printer.

## COMPLAINTS FROM CLASS MEMBERS

48.    Numerous other Class members reported experiencing the same issue. Below are just some comments (unedited) on message boards and Internet forums regarding the problem:

| Date: | Source: | Complaint: |
|---|---|---|
| 2/6/2021 | Trust Pilot[12] | Don't do a firmware update with XP-440. Don't do a firmware update with XP-440. The update is to prevent you from using generic printer cartridges that cost half of Epson cartridges. Oh yeah, and now the printer prints horizontal streaks. Complete waste of my time trying to fix it. Have not yet succeeded. Couldn't get my work done. It is screwed. All because Epson was greedy with regard to selling cartridges |
| 1/19/2021 | BBB[13] | I HAVE A ***** ********* PRO ******* LESS THAN ONE YEAR OLD . MY CONCERNS ARE IAM NOT ABLE TO PRINTER NONE OF MY FILES SINCE ( THE SOFTWARE UPDATE SIMPLE AND STRAIGHT TO THE POINT IAM NOT ABLE TO PRINT |

[12] *See* https://www.trustpilot.com/review/www.epson.com.

[13] *See* https://www.bbb.org/us/ca/long-beach/profile/printer-and-printer-supplies-manufacturer/epson-america-inc-1216-13012805/complaints.

**CLASS ACTION COMPLAINT**

| | | |
|---|---|---|
| | | ANYTHING AT ALL. WHY THE ( firmware update) SCREW UP MT ***** ********* PRO ** ***** |
| 12/30/2020 | Customer Service Scoreboard[14] | Warning. Last firmware update locked out all but epson ink. I have a WF-4734 that has been working fine until I foolishly did the last firmware update. Now my ink (not epson) had been working just fine but now is un recognized. Called customer support. Solution you have to use epson ink. Ink would cost almost as much as printer. Clearly a scam. Will join class action and never buy epson again. |
| 12/21/2020 | Pissed Consumer[15] | I got an error message indicating I needed to download new Epson drivers. I downloaded them. Then I got an error message my ink cartridges could not be recognized. They are new EZ-Link ink cartridges. Now the printer is stuck on the error message, and I cannot print anything - the printer is now useless until I purchase new Epson cartridges. |
| 11/15/2020 | Complaints Board[16] | Epson — My recent wf-4734 firmware upgrade<br><br>Are you guys nuts?? Do you know just how many complaints there are against your products since you upgrade users with firmware that locks out 3rd party cartridges?? I used to work for ge and our major concern was to maintain and increase the superior customer relations we had with our customers. Do you have any idea how many current users will never again buy an epson product? Even microsoft will allow users to regress any update to the previous level if problems are encountered in the upgrade. You absolutely need to do the same - and as quickly as possible! Whoever told you that by trapping customers into using only your cartridges your profits would increase was short sighted. Yes, in some cases revenue will increase temporarily. It is only a matter of time when either the third party ink providers or the internet guru's come up with a fix. Do you really think any of us users (yes, we are users of epson products and may have been for many years) will voluntarily buy epson in the future when other providers, such as brother, do not trap their users into proprietary ink? I, for one, would love to see epson become a leader in this area showing customers that they come first - not just their money. You also could lower the prices on your cartridges to be far more competitive with third party providers making them obsolete.<br><br>I am 88 years old and can use my computer and printer to earn some extra money here and there. I find it a financial hardship to buy your ink at the list price. You have shut down my income from this source since you have turned my hardware into a door stop. Correct this asap please. |
| 9/18/2020 | BBB | Printer was purchased for business use. Non Epson ink was used in the printer. The company issued a firmware update that made the printer unusable. I was prompted to update the printers firmware and did so. We use non Epson brand ink due to cost constraints. The firmware update rendered the printer unusable |

---

[14] *See* https://www.customerservicescoreboard.com/Epson.

[15] *See* https://epson.pissedconsumer.com/epson-printer-286/RT-C.html.

[16] *See* https://www.complaintsboard.com/epson-my-recent-wf-4734-firmware-upgrade-c1244437.

11

**CLASS ACTION COMPLAINT**

| | | | |
|---|---|---|---|
| | | | unless using Epson brand ink. The printer worked normally before the update. I spoke with customer service for over an hour. I was told that Epson has disabled rollbacks of firmware update and 'too bad, you need to use Epson ink for the printer to work now'. this goes against a supreme court ruling IMPRESSION PRODUCTS, INC. v. LEXMARK INTERNATIONAL, INC. issued in 2017. This ruling essentially that once a company has sold a product, it can't dictate how the product is used. |
| 9/18/2020 | BBB | | Epson updated firmware to block functionality post purchase. They are blocking use of 3rd party ink. Also blocking use of non printing functions. Epson released a firmware update to block usage of any 3rd party or refillable ink cartridges. This is done post purchase. They are also are blocking use of genuine epson ink that are starter cartridges. Usage of 3rd party or refillable printer ink is a common expectation. This needs to be clear prior to purchase and should not be changes on previously purchased units. Not allowing genuine epson ink because it's a starter cartridge is just a malicious business practice. In addition, Epson is blocking use of non printing functions on machines that are out of ink. My ****** cannot scan documents until I purchase new ink from Epson. This is essentially electronic ransom. |
| 8/10/2020 | BBB | | After installation of an Epson firmware update my printer is no longer operable and i am not allowed to reinstall the older version. After installation of new Epson firmware I can no longer print, but get an error message saying it can't recognize my ink cartridges. The new version of printer firmware does not allow the use of after market ink cartridges that I have installed, but is now requiring me to buy their more expensive OEM product in order to use my 1 year old printer. There was no warning of this effect when Epson pushed the new version of firmware to my printer nor when I purchased the printer. They are also not allowing me to re-install an older version. I believe Epson has blatantly sabotaged my working printer in order for them to sell their more expensive cartridges |
| 8/1/2020 | Pissed Consumer | | I had the same experience. The Epson XP 6000 working fine until I installed a software update. <br><br> Then suddenly I'm getting messages that the ink cartridges (Not Epson) cannot be recognized. Really annoying and enough to make me toss the printer than be forced to buy Epson Ink. <br><br> Adding to the problem is that it is a scanner and printer unit where I am unable to use the scanner until the printer cartridge is resolved. I'm done with Epson |
| 7/30/2020 | BBB | | Epson firmware updates deny third party ink vendors. Epson recently released a firmware update for their WF-4730. After my wife applied the update, none of the non Epson ink cartridges work. Epson's firmware update forces consumers only to buy the genuine ink which creates a monopoly for ink on their printers. This illegal practice will shutdown all third party ink producers and cause the consumer to pay higher prices for ink. After wasting an hour of my time on the phone with Epson, they informed me that I cannot rollback the update and I either buy their cartridges or throw the printer out. This is a bad business model. They have the capability of keeping old firmware updates available, but choose not to make them available to the consumer. |

**CLASS ACTION COMPLAINT**

| 3/20/2020 | Pissed Consumer | I sent the following message to the FTC.... After a firmware update that stated it was a security issue update, I got an error message that my printer "cannot recognize ink cartridge". |
| | | Before the update the "third party" cartridges worked fine for about 8 months. I was mislead to download the update thinking there was a security issue that needed to be fixed. Instead it was ploy to get me to download the update to maliciously force me to purchase their ink cartridges at an inflated price (figures out to be over $4500/Gal). Now I have about $50 dollars worth of unusable ink cartridges. |
| | | And I will also be out of $100 that I paid for this printer. |
| | | I am going to buy a new printer rather than give in to their ransom demand of buying their ink cartridge which would be about the same cost of a new printer. They have rendered my printer useless until I give in to their ransom demand of using only Epson ink cartridges. |

## CLASS ALLEGATIONS

49.     **Class Definition**: Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of Plaintiff and the Classes defined as follows:

> **Device Owner Class**. All persons in the United States who own a Class Printer.

> **Damages Subclass**. All persons in the United States who own a Class Printer that displayed a diagnostic error, such as "ink cartridge not recognized" or other similar error code, as a result of Epson's transmission of a firmware update.

> **State Consumer Subclass**. All persons residing in Pennsylvania and States with a similar consumer protection statute to 73 P.S. § 201-2(4)(xv), who own a Class Printer that displayed a diagnostic error, such as "ink cartridge not recognized" or other similar error code, as a result of Epson's transmission of a firmware update.

50.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their immediate families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely

request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

51.     Plaintiff reserves the ability to modify the definition of the proposed Classes before the Court determines whether class certification is warranted.

52.     The requirements of Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) are met in this case.

53.     The Fed. R. Civ. P. 23(a) elements of Numerosity, Commonality, Typicality, and Adequacy are all satisfied.

54.     **Numerosity**: The exact number of members of the Classes is unknown and not available to Plaintiff, but it is clear that individual joinder is impracticable. On information and belief, Defendant sent this transmission to thousands of Class Printers. As set forth above, Epson earns billions of dollars in revenue from its printer business. Members of the Classes can be identified through Defendant's records or by other means.

55.     **Commonality:** Commonality requires that the Class members' claims depend upon a common contention such that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. Here, there is a common contention for all Class members to whom Epson sent a transmission that caused damage to its customers' printers and supply cartridges.

56.     **Typicality**: Plaintiff's claims are typical of the claims of other Class members in that Plaintiff and the Class members sustained damages arising out of Defendant's uniform wrongful conduct in the form of its malicious transmission and malfunction, and the error message that misrepresented the cause of the malfunction.

57.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class members. Plaintiff's claims are made in a representative capacity on behalf of the Class members. Plaintiff has no interests antagonistic to the interests of the other members of the proposed Classes and are subject to no unique

defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the proposed Classes. Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the Class members and have the financial resources to do so.

58.     **This case also satisfies Fed. R. Civ. P. 23(b)(2) - Policies Generally Applicable to the Class**: This class action is appropriate for certification because Epson has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge to those practices hinge on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

59.     **This case also satisfies Fed. R. Civ. P. 23(b)(3) - Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual Class members. Common questions and/or issues for the Classes include, but are not necessarily limited to the following:

     i.    Whether Epson knowingly caused the transmission of a program, information, code, or command that caused damage to Class Printers and supply cartridges;

    ii.    Whether Epson's conduct constitutes prohibited conduct under the CFAA, California False Advertising Law, Cal. Bus. & Prof. Code § 17500, Cal. Penal Code § 502(c), Trespass to Chattels, 73 P.S. § 201-2(4)(xv), and the fraudulent, unfair, and unlawful prongs of the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200;

iii.    The method of calculation and extent of damages for Plaintiff and the Class members;

iv.    Whether Plaintiff and Class members are entitled to an award of damages, restitution, and compensatory relief, and, if so, in what amount;

v.    Whether the Court should enter injunctive relief as requested herein.

60.    **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy as joinder of all parties is impracticable. The damages suffered by individual Class members will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendant's misconduct. Even if Class members could mount such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort and expense will be enhanced, and uniformity of decisions ensured.

## COUNT I
### Violation of the Computer Fraud and Abuse Act
### 18 U.S.C. § 1030
### (On Behalf of Plaintiff and the Device Owner Class)

61.    Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

62.    18 U.S.C. § 1030(a)(5)(A) prohibits knowingly causing the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causing damage without authorization, to a protected computer.

1
2
3

63.    Plaintiff's Epson XP-640 is a protected computer under 18 U.S.C. § 1030(e)(2)(B). The Class Printers are also protected computers under 18 U.S.C. § 1030(e)(2)(B).

4
5

64.    Epson sent or caused to be sent a transmission of a program, information, code, or command falsely characterizing it as a firmware update to the Class Printers.

6
7

65.    Epson intentionally and knowingly sent or caused to be sent this transmission to the Class Printers, including Plaintiff's printer.

8
9

66.    Epson did not have permission or authorization from Plaintiff and the Class members to make any modifications to the Class Printers.

10
11
12
13
14
15
16

67.    Epson intentionally caused damage to the Class Printers. Epson's transmission caused damage to the Class Printers by erasing, modifying, or altering the code that had enabled compatibility with third-party cartridges and disabling Class Printers' ability to use third-party cartridges. Epson caused damage by rendering Plaintiff's and Class members' non-Epson brand cartridges useless. Class Printers were and are useless if they are equipped with third-party supplies and of diminished capabilities and value permanently as a result of the incompatibility going forward.

17
18

68.    Epson did not have permission or authorization from Plaintiff and the Class members to cause damage to the Class Printers, including Plaintiff's printer.

19
20
21
22
23

69.    As a direct and proximate result of this misconduct, Epson caused damage to the Class Printers, and Plaintiff and the Class members suffered losses during a one-year period that exceed $5,000 in the aggregate. Plaintiff purchased his Epson XP-640 for $69.99, but it was likely worth more because Epson sells printers below costs pursuant to the "razor and blades" business model.[17] Prior to Epson's unlawful conduct, Plaintiff was

24
25
26
27
28

[17] *See* Bufete, Tercius. "Why Is Printer Ink So Expensive? Consumer Reports explains, and tells you have to save on ink costs" *Consumer Reports*, Sep. 15, 2018, https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive. (last accessed Feb. 24, 2021) (an "all-in-one" device that sells at retail for $70 costs $120 to manufacture, not including research and development and post-manufacturing costs like shipping).

17

**CLASS ACTION COMPLAINT**

able to purchase high capacity, environmentally-friendly Valuetoner inkjet supply cartridges for $32.99. After the transmission, Plaintiff's Valuetoner cartridges were rendered useless even though they were functioning perfectly at the time of Epson's firmware activation, and Plaintiff was forced to purchase several "standard capacity" Epson-authorized sets of cartridges that did not last as long as the Valuetoner remanufactured cartridges. These lower capacity cartridges came at higher replacement prices of $77.65, $73.29, and $73.27 per set, and an additional Photo Black, for $20.13, totaling $244.34, which Plaintiff was forced to incur because of Epson's unlawful conduct. Epson's practices also caused Plaintiff's printer to decrease in market value, as it can no longer use less-expensive ink cartridges. Further, Plaintiff and the Class have to pay to safely dispose of their unused and useless supplies.

70.    Epson's transmission caused damage and loss to Plaintiff and Class members, including by disabling Class Printers, eliminating or impairing Plaintiff's and Class members' use of Class Printers, depriving Plaintiff and Class members of the ability to use non-Epson supply cartridges in their Class Printers, causing Plaintiff and Class members to expend money, time, and labor to investigate and repair disabled Class Printers, and decreasing the value of the Class Printers, which Plaintiff and Class members would not have purchased had they known Epson was engaged in and would engage in the conduct alleged herein. Based on Epson's violations of the CFAA, Plaintiff and Class members seek compensatory, injunctive, and other equitable relief, including recovery of economic damages, as well as reasonable attorney's fees and costs, and all other relief provided for under the law.

## COUNT II
**Violation of the California Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502**
**(On Behalf of Plaintiff and the Device Owner Class)**

71.    Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

72.    California Penal Code § 502 prohibits knowing and unauthorized access to computers, computer networks, and computer systems.

73.    Class Printers are "computers" and part of a "computer network" or "computer system" under this statute.

74.    Epson's transmission is a "computer program or software" and "computer contaminant" under Cal. Penal Code §§ 502(b)(3) and (12).

75.    Epson made "access" to the Class Printers under Cal. Penal Code § 502(b)(1) when it sent the malware transmission. Epson caused the unauthorized access to all Class Printers from this jurisdiction and is thereby deemed to have personally accessed the Class Printers in this jurisdiction. Cal. Penal Code § 502(j).

76.    Epson knowingly sent the transmission and knowingly modified, damaged, destroyed, recorded, or transmitted information on the Class Printers under the guise of an update, but without the informed consent, intent or permission of Plaintiff and Class members.

77.    Epson violated California Penal Code § 502 in at least the following respects:

- In violation of Cal. Penal Code § 502(c)(1), Epson altered, destroyed and damaged data in the Class Printers. By causing Class Printers to display the false error message that the ink cartridges could not be recognized, and disabling Class Printers and non-Epson cartridges, Epson deployed these false error messages as a scheme to defraud, deceive, and extort Plaintiff and Class members to purchase new supply cartridges from Epson.

- In violation of Cal. Penal Code § 502(c)(4), by disabling Class Printers, and cartridges, and causing Class Printers to display false error messages, Epson accessed and without authorization added, altered, damaged, deleted, or destroyed Class Printers' data, programs, or software.

- In violation of Cal. Penal Code § 502(c)(5), by disabling Class Printers and cartridges, and causing Class Printers to display false error

1    messages, Epson caused the disruption and denial of computer services

2    to authorized users, such as Plaintiff and the Class members.

3    78. As a direct and proximate result of this misconduct, Epson caused damage to

4    the Class Printers, and Plaintiff and the Class members suffered losses. Plaintiff's printer

5    was purchased new on Amazon.com for $69.99, but it was likely worth more because

6    Epson sells under the "razor and blades" business model. Prior to Epson's unlawful

7    conduct, Plaintiff purchased high capacity, environmentally-friendly Valuetoner inkjet

8    supply cartridges for $32.99. Plaintiff's Valuetoner cartridges were rendered useless even

9    though they were functioning perfectly at the time of Epson's firmware activation, and

10   Plaintiff was forced to purchase several "standard capacity" Epson-authorized sets of

11   cartridges that did not last as long as the Valuetoner remanufactured cartridges. These

12   lower capacity cartridges came at higher replacement prices of $77.65, $73.29, and $73.27

13   per set, and an additional Photo Black for $20.83, totaling $245.04, which Plaintiff was

14   forced to incur because of Epson's unlawful conduct. Epson's practices also caused

15   Plaintiff's printer to decrease in market value. Further, Plaintiff and the Class have to pay

16   to safely dispose of their unused and useless supplies.

17   79. Epson's transmission caused damage and loss to Plaintiff and Class members,

18   including by disabling Class Printers, eliminating or impairing Plaintiff's and Class

19   members' use of Class Printers, depriving Plaintiff and Class members of the ability to

20   use non-Epson supply cartridges in their Class Printers, causing Plaintiff and Class

21   members to expend money, time, and labor to investigate and repair disabled Class

22   Printers, and decreasing the value of the Class Printers, which Plaintiff and Class members

23   would not have purchased had they known Epson was engaged in and would engage in

24   the conduct alleged herein. Based on Epson's violations of Penal Code § 502, Plaintiff and

25   Class members seek recovery of economic damages, injunctive and other equitable relief,

26   as well as reasonable attorney's fees and costs, and all other relief provided for under the

27   law.

28

1
2
3
4

**COUNT III**
**California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500**
**(On Behalf of Plaintiff and the Device Owner Class)**

5   80.   Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

6   81.   Epson violated Cal. Bus. & Prof. Code § 17500 by using false and misleading

7   statements, and material omissions, to promote the sale of Epson's supply cartridges and

8   otherwise "concerning any circumstance or matter of fact connected with the proposed

9   performance or disposition of services."

10   82.   Epson made material omissions regarding its business practice of using the

11   pretext of "updating the firmware" on its printers as a scheme to disable third-party

12   supplies from its systems unfairly and coerce Plaintiff and Class members to buy Epson

13   supplies that are sold for substantial and unjustified premiums. Had Plaintiff and Class

14   members known that Epson employed such tactics, they would not have purchased a Class

15   Printer in the first place or consented to any purported "update."

16   83.   Epson made uniform representations and material omissions that

17   communicated to Plaintiff and Class members that the ink cartridges could not be

18   recognized when that was false – just moments before Epson sent the transmission, there

19   had been no problem. Epson omitted the material fact that the purported recognition

20   problem was caused by Epson's intentional transmission of firmware designed to render

21   third-party supplies incompatible with Epson printers.

22   84.   Epson knew, or in the exercise of reasonable diligence should have known,

23   that its representations and omissions were false and misleading at the time it made them.

24   Epson deliberately provided false representations and omissions to prevent customers

25   from learning the intentional and unlawful design of Epson's firmware updates and further

26   inducing its customers to purchase new supply cartridges from Epson.

27   85.   Epson's false and misleading advertising statements deceived the general

28   public.

86.     As a direct and proximate result of Epson's misleading and false advertising, Plaintiff and Class members have suffered injury-in-fact and have lost money and property. Plaintiff purchased his Epson XP-640 for $69.99 because Epson sells devices below costs pursuant to the "razor and blades" business model.[18] Prior to Epson's unlawful conduct, Plaintiff purchased high capacity, environmentally-friendly Valuetoner inkjet supply cartridges for $32.99. Plaintiff's Valuetoner cartridges were rendered useless even though they were functioning perfectly at the time of Epson's firmware activation, and Plaintiff was forced to purchase several "standard capacity" Epson-authorized sets of cartridges that did not last as long as the Valuetoner remanufactured cartridges. These lower capacity cartridges came at higher replacement prices of $77.65, $73.29, and $73.27 per set, and an additional Photo Black for $20.13, totaling $244.34, which Plaintiff was forced to incur because of Epson's unlawful conduct. Epson's practices also caused Plaintiff's printer to decrease in market value, as it can no longer use less-expensive ink cartridges. Further, Plaintiff and the Class have to pay to safely dispose of their unused and useless supplies.

87.     Plaintiff and Class members reasonably relied to their detriment on Epson's material misrepresentations and omissions regarding its firmware updates and the purported "recognition" problem.

88.     Plaintiff and Class members had to either purchase a set of overpriced Epson supply cartridges or throw away their Epson printer and purchase a printer from another manufacturer. Unless the Court enjoins further unlawful acts by Epson, Plaintiff and Class members face uncertainty as to which of these choices would minimize their damage.

---

[18] *See* Bufete, Tercius. "Why Is Printer Ink So Expensive? Consumer Reports explains, and tells you have to save on ink costs" Consumer Reports, Sep. 15, 2018, https://www.consumerreports.org/printers/why-is-printer-ink-so-expensive. (last accessed Feb. 24, 2021).

**CLASS ACTION COMPLAINT**

89.   Plaintiff and Class members seek to enjoin, under Bus. & Prof. Code § 17535, the violations described herein and to require Epson to issue appropriate corrective disclosures and software fixes.

90.   Epson's false advertising will continue to harm consumers unless and until it is enjoined.

91.   Plaintiff and Class members therefore seek an order requiring Epson to cease its false advertising and unlawful practices, provide full restitution of all monies Epson derived from its false advertising, interest at the highest rate allowable by law, and an award of reasonable attorney's fees and costs under applicable law, including Code of Civil Procedure § 1021.5.

92.   Plaintiff is entitled to and seeks restitution and public as well as private injunctive relief under this section.

**COUNT IV**
**California Unfair Competition Law – Fraudulent Prong**
**Cal. Bus. & Prof. Code § 17200**
**(On Behalf of Plaintiff and the Device Owner Class)**

93.   Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

94.   The fraudulent prong of California's Unfair Competition Law prohibits business practices that are likely to deceive the public.

95.   Epson's practice of sending a transmission that disabled functioning supply cartridges and rendered the Class Printers less valuable, and then misrepresenting the cause of the malfunction at the expense of its customers and competitors, is a practice that is likely to deceive members of the public. Epson's omissions of its business practices from potential printer purchasers is likely to deceive members of the public.

96.   Epson's practices are fraudulent under this section because members of the public are likely to be deceived by this practice.

97.   Plaintiff and Class members own Class Printers and/or received Epson's malware transmission, and thus the value of their printers has been decreased and third-party supplies have been destroyed. Plaintiff purchased his Epson XP-640 for $69.99, but

it was likely worth more because Epson sells printers below costs pursuant to the "razor and blades" business model.[19] Prior to Epson's unlawful conduct, Plaintiff purchased high capacity, environmentally-friendly Valuetoner inkjet supply cartridges for $32.99. Plaintiff's Valuetoner cartridges were rendered useless even though they were functioning perfectly at the time of Epson's firmware activation, and Plaintiff was forced to purchase several "standard capacity" Epson-authorized sets of cartridges that did not last as long as the Valuetoner remanufactured cartridges. These lower capacity cartridges came at higher replacement prices of $77.65, $73.29, and $73.27 per set, and an additional Photo Black for $20.13, totaling $244.34, which Plaintiff was forced to incur because of Epson's unlawful conduct. Epson's practices also caused Plaintiff's printer to decrease in market value, as it can no longer use less-expensive ink cartridges. Further, Plaintiff and the Class have to pay to safely dispose of their unused and useless supplies.

98.    Plaintiff is entitled to and seeks restitution and public as well as private injunctive relief under this section.

**COUNT V**
**California Unfair Competition Law – Unfair Prong**
**Cal. Bus. & Prof. Code § 17200**
**(On Behalf of Plaintiff and the Device Owner Class)**

99.    Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

100.    The unfair prong of California's Unfair Competition Law prohibits unfair business practices that either offend an established public policy or that are immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

101.    Epson's sending a malware transmission that caused a loss of functionality to its own customers, and then misinforming the customers about the cause of the damage,

---

[19] *See* Darby, Larry F. and Pociask, Stephen B. "Inkjet Prices, Printing Costs and Consumer Welfare" *The American Consumer Institute Center for Citizen Research*, November 19, 2007, https://www.theamericanconsumer.org/2007/11/inkjet-prices-printing-costs-and-consumer-welfare. (last accessed Feb. 24, 2021)

is a practice that offends an established public policy or that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.

102.   The utility of Epson's transmissions and untrue statements are very low (as they are fraudulent and anti-competitive) and are vastly outweighed by the serious harm incurred by Plaintiff and Class members.

103.   Any legitimate purpose or benefit of Epson's conduct is substantially outweighed by the harm to consumers, competition, and the general public. There is no legitimate reason why Epson should be allowed to secretly install firmware updates disabling perfectly functioning capabilities without providing its customers a fully informed option to decline the update. There is no legitimate reason why Epson should be allowed to obfuscate or deceive its customers about the reasons why their Epson printers no longer work with competitors' supplies and Epson's role in bringing about the sudden cessation of functionality. If Epson is truly conducting legitimate procedures, then it should inform the customer that the procedures will be conducted, or have been conducted, and not just make vague and misleading statements such as "recognition" problem that conceal Epson's active and purposeful role in bringing about the problem or provide no advice to customers other than to buy Epson supplies at considerable premiums.

104.   Plaintiff and Class members have incurred and continue to incur damages that are actual and recognized by statute in the form of a damaged printer and destroyed toner supply cartridges, environmental disposal costs, and loss of money or property. Plaintiff purchased his Epson XP-640 for $69.99, but it was likely worth more because Epson sells printers below costs pursuant to the "razor and blades" business model.[20] Prior to Epson's unlawful conduct, Plaintiff purchased high capacity, environmentally-friendly Valuetoner inkjet supply cartridges for $32.99. Plaintiff's Valuetoner cartridges were rendered useless even though they were functioning perfectly at the time of Epson's firmware activation,

---

[20] *See* Jack Houston & Irene Anna Kim, "Why printer ink is so expensive," *Business Insider*. https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 (last accessed Feb. 8, 2021).

**CLASS ACTION COMPLAINT**

and Plaintiff was forced to purchase several "standard capacity" Epson-authorized sets of cartridges that did not last as long as the Valuetoner remanufactured cartridges. These lower capacity cartridges came at higher replacement prices of $77.65, $73.29, and $73.27 per set, and an additional Photo Black for $20.13, totaling $244.34, which Plaintiff was forced to incur because of Epson's unlawful conduct. Epson's practices also caused Plaintiff's printer to decrease in market value, as it can no longer use less-expensive ink cartridges. Further, Plaintiff and the Class have to pay to safely dispose of their unused and useless supplies.

105.   Plaintiff is entitled to and seeks restitution and public as well as private injunctive relief under this section.

### COUNT VI
### California Unfair Competition Law – Unlawful Prong
### Cal. Bus. & Prof. Code § 17200
### (On Behalf of Plaintiff and the Device Owner Class)

106.   Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

107.   The unlawful prong of California Business and Professions Code § 17200 prohibits any unlawful business practice.

108.   Each of Epson's malicious transmissions and false statements constitute violations of 18 U.S.C. § 1030(a)(5)(A) of the CFAA, Cal. Penal Code § 502, California's False Advertising Law, trespass to chattels, and Pennsylvania's 73 P.S. § 201-2(4)(xv), as described herein, and all constitute separate and cumulative violations of the unlawful prong of § 17200.

109.   Plaintiff and Class members have incurred damages in the form of a devalued printer, ruined supply cartridges, environmental disposal costs, and lost money or property. Plaintiff purchased his Epson XP-640 for $69.99, but it was likely worth more because Epson sells printers below costs pursuant to the "razor and blades" business model.[21] Prior to Epson's unlawful conduct, Plaintiff purchased high capacity,

---

[21] *See* Jack Houston & Irene Anna Kim, "Why printer ink is so expensive," *Business Insider*. https://www.businessinsider.com/why-printer-ink-so-expensive-2019-8 (last accessed Feb. 24, 2021).

environmentally-friendly Valuetoner inkjet supply cartridges for $32.99. Plaintiff's Valuetoner cartridges were rendered useless even though they were functioning perfectly at the time of Epson's firmware activation, and Plaintiff was forced to purchase several "standard capacity" Epson-authorized sets of cartridges that did not last as long as the Valuetoner remanufactured cartridges. These lower capacity cartridges came at higher replacement prices of $77.65, $73.29, and $73.27 per set, and an additional Photo Black for $20.13, totaling $244.34, which Plaintiff was forced to incur because of Epson's unlawful conduct. Epson's practices also caused Plaintiff's printer to decrease in market value, as it can no longer use less-expensive ink cartridges. Further, Plaintiff and the Class have to pay to safely dispose of their unused and useless supplies.

110.  Plaintiff is authorized to pursue a private right of action against Epson under § 17204.

111.  Plaintiff is entitled to and seeks restitution and public as well as private injunctive relief under this section.

## COUNT VII
### Trespass to Chattels
### (On Behalf of Plaintiff and the Damages Subclass)

112.  Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

113.  Plaintiff and Class members owned, possessed, and used, and had a right to possess and use, their Class Printers and their supply cartridges that were designed to be used in these printers.

114.  Epson wrongfully and intentionally interfered with the ownership, possession, and use of the Class Printers and Plaintiff's and Class members' supply cartridges, by sending malware to Class Printers that disabled Class Printers containing cartridges sold by third parties and rendered those cartridges and Class Printers inoperable.

115.  Epson's wrongful and intentional interference with Plaintiff's and Class members' ownership, possession, and use of their Class Printers and third-party cartridges caused damage to Plaintiff and Class members, including by preventing the Class Printers from operating, by impairing the condition of these printers, by reducing the value of these

printers, destroying the value of their non-Epson supply cartridges, and by depriving Plaintiff and Class members of the use of the Class Printers for a substantial period of time. A reasonable person would be willing to pay significantly less for a Class Printer and would pay nothing for the cartridges now converted to a waste product that must be disposed of.

116.    Plaintiff and the Class members are entitled to recover the amount by which Epson's malware transmission harmed their ownership interests in the Class Printers and toner supply cartridges.

**COUNT VIII**
**Violation of 73 P.S. § 201-2(4)(xv)**
**Pennsylvania Unfair Trade Practices**
**(on Behalf of Plaintiff and the State Consumer Subclass)**

117.    Plaintiff incorporates paragraphs 1–60 as if fully set forth herein.

118.    73 P.S. § 201-2, *et seq.*, Pennsylvania's Unfair Trade Practices Act, prohibits a specific list of 21 unfair methods of competition.

119.    73 P.S. § 201-2(4)(xv) prohibits "knowingly misrepresenting that services, replacements or repairs are needed if they are not needed[.]"

120.    Epson violated this provision by falsely misrepresenting to Plaintiff that his ink cartridges needed to be replaced.

121.    As a result of this violation, Plaintiff incurred damages in the form of being forced to spend money on new cartridges.

122.    Any consumer who suffers damage under this section may bring a class action on behalf of himself and all those similarly situated.

123.    Plaintiff and the Subclass are entitled to injunctive relief and actual, statutory and punitive damages, costs and attorney's fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes defined above, prays for the following relief:

A.   An order certifying the Classes as defined above, appointing Plaintiff as the Representative of the Classes, and appointing Plaintiff's counsel as Class Counsel;

B.   An order declaring that Defendant's actions, as set out above, violate the CFAA under 18 U.S.C. § 1030(a)(5)(A);

C.   An order declaring that Defendant's actions, as set out above, violate the California  Penal Code § 502;

D.   An order declaring that Defendant's actions, as set out above, violate the California False Advertising Law, Cal. Bus. & Prof. Code § 17500;

E.   An order declaring that Defendant's actions, as set out above, violate the fraudulent, unfair, and unlawful prongs of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;

F.   An order declaring that Defendant's actions, as set out above, constitute trespass to chattels;

G.   An order declaring that Defendant's actions, as set out above, violate 73 P.S. § 201-2(4)(xv);

H.   An injunction requiring Defendant to cease the unlawful business practices described herein and otherwise protecting the interests of Plaintiff and the Classes;

I.   An order awarding restitution, other equitable relief, and damages to Plaintiff and the Classes, including punitive damages;

J.   An award of reasonable attorney's fees and costs pursuant to 73 P.S. § 201-2(4)(xv), Cal. Civ. Proc. Code § 1021.5, and Cal. Penal Code §§ 502(e)(1) and (2); and

K.   Such other and further relief that the Court deems reasonable and just.

## **JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

**CLASS ACTION COMPLAINT**

Dated: February 25, 2021          Respectfully submitted,

JOHN GALGON, individually and on behalf of all others similarly situated,

By:  /s/ Mark L. Javitch
Mark L. Javitch (California SBN 323729)
JAVITCH LAW OFFICE
480 S. Ellsworth Ave
San Mateo CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 648-0705
*mark@javitchlawoffice.com*

*Attorney for Plaintiff and the Putative Classes*