QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Shon Morgan (Bar No. 187736)
  (shonmorgan@quinnemanuel.com)
  John W. Baumann (Bar No. 288881)
  (jackbaumann@quinnemanuel.com)
  865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

Attorneys for Defendant Epson America,
Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN GALGON, individually and on behalf of all others similarly situated, | CASE No. 2:21-cv-01794-CBM-MRW |
| Plaintiff, | **DEFENDANT EPSON AMERICA INC.'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS;** |
| vs. | **DECLARATION OF SIRANUSH ARABIAN;** |
| EPSON AMERICA, INC., | **[PROPOSED] ORDER** |
| Defendant. | Date:         April 20, 2021<br>Time:        10:00 a.m.<br>Judge:       Hon. Consuelo B. Marshall<br>Courtroom:  8B |

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, on April 20, 2021 at 10:00 a.m., or as soon thereafter as counsel may be heard, defendant Epson America, Inc. ("Epson"), by and through its attorneys and pursuant to 9 U.S.C. § 4, hereby moves to compel arbitration of plaintiff's claims, stay proceedings pending resolution of any arbitration, and stay proceedings pending a decision on this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 15, 2021.

This motion is made on the grounds that plaintiff agreed to arbitrate his claims against Epson on a non-class basis and further agreed any disputes concerning the arbitrability of his claims must be submitted to the arbitrator for resolution.  This motion is based upon this Notice, the following memorandum of points and authorities, the Declaration of Siranush Arabian ("Arabian Decl.") and exhibits thereto, the pleadings and records on file herein, on such other and further argument and evidence as may be presented at the time of the hearing, and all matters of which this Court may take judicial notice.

DATED:  March 22, 2021          QUINN EMANUEL URQUHART &
                                SULLIVAN. LLP


                           By_____/s/ Shon Morgan_____
                                Shon Morgan
                                Attorneys for Defendant Epson America,
                                Inc.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................ 1

BACKGROUND .................................................................................. 1

I.      THE COURT'S ORDER COMPELLING ARBITRATION IN *MONDIGO* ................................................................................ 1

II.     PLAINTIFF'S ARBITRATION AGREEMENTS ......................... 2

LEGAL STANDARD ........................................................................... 6

ARGUMENT ..................................................................................... 7

III.   ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR .......................................................... 7

IV.   THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFF ENTERED INTO VALID ARBITRATION AGREEMENTS THAT CLEARLY COVER THE CLAIMS AT ISSUE .......................... 9

V.    THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS ........................... 11

VI.   PLAINTIFF'S CLAIMS SHOULD BE STAYED PENDING RESOLUTION OF ANY ARBITRATION, AND THIS ACTION SHOULD BE STAYED PENDING A RULING ON THIS MOTION ........ 12

CONCLUSION ................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amirhamzeh v. Wells Fargo Bank, N.A.*,
    2014 WL 12610227 (N.D. Cal. Oct. 31, 2014)...........................................10

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..........................................................................................6

*Bitstamp Ltd. v. Ripple Labs Inc.*,
    2015 WL 4692418 (N.D. Cal. Aug. 6, 2015).................................................8

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) .........................................................................6

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) .........................................................................9

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018) ...................................................................................11

*Hamoudeh v. Unitedhealth Grp. Inc.*,
    2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016).....................................12

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) .......................................................................................7

*Hotel Greystone Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*,
    897 F. Supp. 168 (S.D.N.Y. 1995).................................................................12

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002) ............................................................................................7

*In re Holl*,
    925 F.3d 1076 (9th Cir. 2019) .........................................................................9

*Jialu Wu v. iTalk Glob. Commc'ns, Inc.*,
    2020 WL 8461696 (C.D. Cal. Oct. 21, 2020) ..............................................10

*Kim v. Tinder, Inc.*,
    2018 WL 6694923 (C.D. Cal. July 12, 2018) ................................................6

*Lakhan v. U.S. Sec. Assocs., Inc.*,
    2019 WL 175043 (C.D. Cal. Jan. 11, 2019) ..................................................8

*Lamps Plus, Inc. v. Varela*,
    139 S. Ct. 1407 (2019) ...................................................................................11

*Mahamedi IP Law, LLP v. Paradice & Li, LLP*,
    2017 WL 2727874 (N.D. Cal. Feb. 14, 2017)..............................................12

*Mendoza v. Uber Techs. Inc.*,
  2020 WL 2563047 (C.D. Cal. May 4, 2020) .................................................. 12

*Mondigo v. Epson America, Inc.*,
  Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.) at ECF No. 32 ..... 1, 2, 7, 8, 9

*Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*,
  460 U.S. 1 (1983) ...................................................................................... 6, 10

*Prima Paint Corp. v. Flood & Conklin Mfr. Co.*,
  388 U.S. 395 (1967) .......................................................................................... 7

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) ....................................................................................... 7, 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) ........................................................................................ 11

*Wiseley v. Amazon.com, Inc.*,
  709 F. App'x 862 (9th Cir. 2017) .................................................................... 10

## **Statutory Authorities**

9 U.S.C. § 1 ......................................................................................................... 6

9 U.S.C. §§ 1-16 ................................................................................................. 6

9 U.S.C. § 2 ......................................................................................................... 6

9 U.S.C. § 3 ..................................................................................................... 7, 12

Cal. Bus. & Prof. Code § 17200 .......................................................................... 2

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

This dispute does not belong in court.  Indeed, this Court recently compelled to arbitration a nearly identical putative class action based on the exact same arbitration agreement to which plaintiff here agreed.  *Mondigo v. Epson America, Inc.*, Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.) at ECF No. 32.  There is no reason the result should differ in this copycat case.

Here, as in *Mondigo*, plaintiff expressly agreed to arbitrate any grievances related to the printer he purchased from Epson and the software used in that printer. The terms of his arbitration agreement are conspicuous, fair, and reached through a process and on substantive terms that courts have consistently held must be enforced to effectuate the purposes of the Federal Arbitration Act.  Plaintiff's arbitration agreement also expresses a clear and unmistakable intent to commit issues of arbitrability to the arbitrator.  Thus, as in *Mondigo*, to the extent plaintiff contends his claims are not subject to the arbitration agreements for any reason, this issue must be decided in arbitration.  Accordingly, the Court should compel arbitration of plaintiff's claims and stay proceedings pending resolution of any arbitration.

Additionally, because this Court is not the proper forum for plaintiff's claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration.

### BACKGROUND

### I.   THE COURT'S ORDER COMPELLING ARBITRATION IN *MONDIGO*

On May 15, 2020, plaintiffs William Mondigo, Martin Dignard, Richard Famiglietti, Michael Kovach, Felix Rabinovich, Jesse Gordon, and Gregory Szot filed a putative class action complaint against Epson, which was assigned to this Court.  *Mondigo v. Epson America, Inc.*, Case No. 2:20-cv-04400-CBM-GJS (C.D.

Cal.).  There, as here, plaintiffs alleged third-party ink stopped functioning in their printers as a result of Epson's software updates and, based on these allegations, asserted class claims under the Computer Fraud and Abuse Act ("CFAA"); California Business & Professions Code § 17200 ("UCL"); and a common law theory of unjust enrichment.  *Id.* at ECF No. 1.

Epson promptly moved to compel arbitration.  *Id.* at ECF No. 21.  Like plaintiff here, each plaintiff in *Mondigo* had agreed—both at the time they originally set up their printers and again upon updating their software—to arbitrate "all disputes" with Epson on an individual basis.  *Id.*

On October 13, 2020, this Court granted Epson's motion and stayed the proceedings pending the completion of any arbitration.  *Id.* at ECF No. 32.  This Court determined plaintiffs had "each agreed to the software license agreement" at the time they first set up their Epson printers and "entered into another arbitration agreement when they installed the software updates which are the subject of the Complaint."  *Id.* at 3.  This Court further found "the delegation clause in the software license agreement and Updater EULA 'clearly and unmistakably' indicates the parties' intent for the arbitrator to decide the issue of arbitrability."  *Id.* at 5.  Accordingly, this Court rejected plaintiffs' attempts to upend the arbitration agreements and instead determined it "must enforce the agreements according to their terms and compel the issue of arbitrability of Plaintiffs' claims to arbitration."  *Id.* at 6-7.

## II.     PLAINTIFF'S ARBITRATION AGREEMENTS

Plaintiff here followed the exact same steps to agree to the exact same arbitration agreements that were the subject of this Court's order compelling arbitration in *Mondigo*.

Plaintiff alleges he purchased an Epson XP-640 printer on January 25, 2018 and subsequently began using this printer.  ECF No. 1 at ¶¶ 37, 40.  To set up and begin using his printer, plaintiff was required to view Epson's software license—this

license was automatically displayed for the user to see as part of the setup process. Declaration of Siranush Arabian at ¶ 4.  Plaintiff was then required to click a bubble that appeared immediately below the displayed software license (just beneath the text of the license) to signify his agreement to the terms of the software license.  *Id.*

Among the terms in the software license to which plaintiff agreed is an arbitration agreement—indeed, the very first paragraph of the license agreement calls attention to this in capitalized, oversized font that notifies the user "IF YOU ARE LOCATED IN THE UNITED STATES, SECTION 14 OF THIS DOCUMENT APPLIES TO YOU. SECTION 14 CONTAINS A BINDING ARBITRATION PROVISION THAT LIMITS YOUR ABILITY TO SEEK RELIEF IN A COURT BEFORE A JUDGE OR JURY, AND WAIVES YOUR RIGHT TO PARTICIPATE IN CLASS ACTIONS OR CLASS ARBITRATIONS FOR CERTAIN DISPUTES."  Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14.

Additionally, plaintiff reaffirmed his agreement to arbitrate disputes with Epson at the time he installed the software updates that are the subject of his complaint.  Arabian Decl. at ¶¶ 4-5, Ex. 2; ECF No. 1 at ¶ 31 (conceding plaintiff "authorized" the update).  To install the update, plaintiff was required to view the Epson End User Software License Agreement ("Updater EULA"), which was automatically displayed for plaintiff to see, and plaintiff was once again required to click to signify his agreement.  Arabian Decl. at ¶ 7.  The arbitration agreement in the Updater EULA is substantively identical to the arbitration agreement in plaintiff's software license.  *Compare* Arabian Decl. at ¶ 3, Ex. 1 at ¶ 14 (software license), *with* ¶ 5, Ex. 2 at ¶ 22 (Updater EULA).

**<u>Prominent Headings and Clear Terms.</u>**  Plaintiff's arbitration agreements begin with a prominent heading in capitalized, bolded font identifying the separate agreement to arbitrate and explain in simple terms the arbitration process and how it differs from a trial in court:

**DISPUTES, BINDING INDIVIDUAL ARBITRATION, AND WAIVER OF CLASS ACTIONS AND CLASS ARBITRATIONS**
…
You and Epson agree that all Disputes shall be resolved by binding arbitration according to this Agreement. **ARBITRATION MEANS THAT YOU WAIVE YOUR RIGHT TO A JUDGE OR JURY IN A COURT PROCEEDING AND YOUR GROUNDS FOR APPEAL ARE LIMITED.**

Arabian Decl. at ¶¶ 3, 5, Exs. 1-2 at ¶ 14.2 (software license) & 2 at ¶ 22.2 (Updater EULA) (emphasis in original).

**Class Action Waiver.** Plaintiff's arbitration agreements also explicitly set forth the rights plaintiff waived by agreeing to arbitrate, and contain a separate section in bold, capitalized font notifying plaintiff of his agreements to waive the right to serve "**AS A PLAINTIFF OR CLASS MEMBER IN ANY CLASS OR REPRESENTATIVE PROCEEDING**[.]" Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA) (emphasis in original).

**Broad Scope.** Plaintiff's arbitration agreements broadly cover "all Disputes between you and Epson," and define "Disputes" to "have the broadest meaning permissible under law," including "any dispute, claim, controversy or action between you and Epson arising out of or relating to this Agreement, the Software, Epson Hardware, or other transaction involving you and Epson, whether in contract, warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation, ordinance, or any other legal or equitable basis." Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).[1]

**Delegation of Arbitrability Disputes.** Plaintiff's arbitration agreements also contain a clear expression of intent to delegate issues of arbitrability to the

arbitrator.  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or agency, shall have exclusive authority to resolve all disputes arising out of or relating to the interpretation, applicability, enforceability or formation of this Agreement, including any claim that all or any part of this Agreement is void or voidable.").

**Arbitration Before JAMS And Payment Of Fees.**  Plaintiff's arbitration agreements require arbitration before JAMS, pursuant to the rules of JAMS in effect at the time the arbitration is filed, and broadly empower the arbitrator "to grant whatever relief would be available in a court under law or in equity."  *See* Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at ¶ 22.6 (Updater EULA). The agreements further provide that "Epson shall pay, or (if applicable) reimburse you for, all JAMS filings and arbitrator fees for any arbitration commenced (by you or Epson) pursuant to provisions of this Agreement."  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6(c) (software license) & 2 at ¶ 22.6(c) (Updater EULA).

**Broad Right To Opt Out.**  Finally, the agreements allowed plaintiff to opt out within thirty days of his assent to the agreements by sending a letter to "Epson America, Inc., ATTN: Legal Department, 3840 Kilroy Airport Way, Long Beach, CA 90806."  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.7 (software license) & 2 at ¶ 22.7 (Updater EULA).  Despite having this option, plaintiff chose not to opt out of his arbitration agreements.  Arabian Decl. at ¶ 8.

---

[1]   The arbitration agreements contain a limited carve out—not applicable here— for "a claim or cause of action for (a) trademark infringement or dilution, (b) patent infringement, (c) copyright infringement or misuse, or (d) trade secret misappropriation," which are required to be heard in court.  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).

## **LEGAL STANDARD**

The FAA governs the enforcement of arbitration clauses in commercial contracts.[2] 9 U.S.C. §§ 1-16. Section 2 of the FAA states:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "Section 2 is a congressional declaration of a liberal federal policy favoring arbitration agreements . . . ." *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or any allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. "[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation, citation and alterations omitted).

---

[2]   The FAA applies where, as here, the arbitration agreement appears in a contract involving interstate commerce. *See* 9 U.S.C § 1; ECF No. 1 at ¶ 15 (recognizing the parties are diverse for purposes of CAFA jurisdiction). Further, plaintiffs' arbitration agreements contain an explicit FAA choice-of-law clause. *See* Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.2 (software license) & 2 at ¶ 22.2 (Updater EULA) ("You and Epson understand and agree that . . . the Federal Arbitration Act (9 U.S.C. §1, et seq.) governs the interpretation and enforcement of this Section 14"). "An FAA choice-of-law provision in an arbitration agreement is enforceable." *Kim v. Tinder, Inc.*, 2018 WL 6694923, at *2 (C.D. Cal. July 12, 2018) (citing *Brennan v. Opus Bank*, 796 F.3d 1125, 1129-31 (9th Cir. 2015)).

Pursuant to Section 3 of the FAA, if a suit is brought in court:

> [U]pon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3. Once a court determines a claim is subject to arbitration, it lacks authority to address the merits of that claim. *See Prima Paint Corp. v. Flood & Conklin Mfr. Co.*, 388 U.S. 395, 400 (1967).

## ARGUMENT

## III.   ANY QUESTIONS OF ARBITRABILITY MUST BE DECIDED BY AN ARBITRATOR

The Supreme Court has recognized "that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69 (2010). "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Id.* at 70. If the parties have "clearly and unmistakably" agreed that questions of arbitrability must be decided by the arbitrator, such provisions must be enforced. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation and citation omitted). As the United States Supreme Court recently held, "[w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019). Rather, "[i]n those circumstances, a court possesses no power to decide the arbitrability issue." *Id.*

This was the basis on which plaintiffs' claims were compelled to arbitration in *Mondigo* and it applies equally here. As this Court determined in *Mondigo*, "the

-7-      Case No.   2:21-cv-01794-CBM-MRW

1  delegation clause in the software license agreement and Updater EULA 'clearly and

2  unmistakably' indicates the parties' intent for the arbitrator to decide the issue of

3  arbitrability." *Mondigo*, Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.), ECF No.

4  32 at 5. *See also* Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.6 (software license) & 2 at

5  ¶ 22.6 (Updater EULA) ("The arbitrator, and not any federal, state or local court or

6  agency, shall have exclusive authority to resolve all disputes arising out of or

7  relating to the interpretation, applicability, enforceability or formation of this

8  Agreement, including any claim that all or any part of this Agreement is void or

9  voidable.").[3]

10      Consistent with this Court's decision in *Mondigo*, other courts have likewise

11  held the language contained in plaintiff's arbitration agreements evinces such an

12  intent. *See, e.g., Rent-A-Ctr.*, 561 U.S. at 66 (delegation provision stated "[t]he

13  Arbitrator, and not any federal, state, or local court or agency, shall have exclusive

14  authority to resolve any dispute relating to the interpretation, applicability,

15  enforceability or formation of this Agreement including, but not limited to any claim

16  that all or any part of this Agreement is void or voidable."); *Lakhan v. U.S. Sec.

17  Assocs., Inc.*, 2019 WL 175043, at *6 (C.D. Cal. Jan. 11, 2019) (holding agreement

18  that required an arbitrator to "resolve any issue relating to the interpretation,

19  formation or enforceability of this Agreement, or any issue relating to whether a

20  Claim is subject to arbitration under this Agreement" was "similar to others that

21  courts in this District have determined clearly and unmistakably provide for

22  threshold issues of arbitrability to be determined by an arbitrator.") (citation

23  omitted).

24      _____

25  [3]   In addition to the explicit delegation agreements, plaintiffs' agreements also
incorporate the JAMS rules, which separately evinces the "clear and unmistakable"
26  intent to commit arbitrability issues to the arbitrator. Arabian Decl. at ¶¶ 3, 5, Exs. 1
at ¶ 14.6 (software license) & 2 at 22.6 (Updater EULA) (arbitration to be conducted
27  under JAMS rules); *Bitstamp Ltd. v. Ripple Labs Inc.*, 2015 WL 4692418, at *5
(N.D. Cal. Aug. 6, 2015) (holding that incorporation of the JAMS rules "overcame
28  the default rule and assigned the arbitrability question to the arbitrator.").

Because plaintiff "clearly and unmistakably" agreed to delegate questions of arbitrability to the arbitrator, to the extent he challenges the interpretation, applicability, or enforceability of his agreements, those issues must be decided by the arbitrator.

## IV. THOUGH NOT AN ISSUE FOR THE COURT, PLAINTIFF ENTERED INTO VALID ARBITRATION AGREEMENTS THAT CLEARLY COVER THE CLAIMS AT ISSUE

Because disputes regarding the scope and validity of the arbitration agreements are reserved for the arbitrator, the Court need not address these issues. However, if the Court were to reach these issues, they too mandate this dispute be sent to arbitration. Under the FAA, arbitration must be compelled where, as in this case: (1) a valid agreement to arbitrate exists; and (2) the claims at issue fall within the scope of that agreement. *See Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Here, both conditions are met and arbitration is required.

As discussed, to set up and begin using his printer, plaintiff was required to view and provide his affirmative consent to Epson's software license. Arabian Decl. at ¶ 4. Additionally, plaintiff reaffirmed his agreement to arbitrate when he was presented with the Updater EULA at the time of the software update and once again affirmatively assented to the terms. Arabian Decl. at ¶ 7; ECF No. 1 at ¶ 31 (conceding he "authorized" the update). As this Court determined in *Mondigo* based on this same process, there can be no "dispute [plaintiff] entered into the software license agreement and/or the Updater EULA[.]" *See Mondigo*, Case No. 2:20-cv-04400-CBM-GJS (C.D. Cal.), ECF No. 32 at 5.[4] Indeed, "[f]ederal courts . . . have recognized the general enforceability of . . . online agreements that require affirmative user assent." *In re Holl*, 925 F.3d 1076, 1085 (9th Cir. 2019). *See also*

---

[4] In fact, the plaintiffs in *Mondigo* did not even attempt to dispute this issue. *Id.*

1   *Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 864 (9th Cir. 2017) ("The notices

2   on Amazon's checkout and account registration pages, which alerted Wiseley that

3   clicking the corresponding action button constituted agreement to the hyperlinked

4   [Conditions of Use], were in sufficient proximity to give him a 'reasonable

5   opportunity to understand' that he would be bound by additional terms."); *Jialu Wu*

6   *v. iTalk Glob. Commc'ns, Inc.*, 2020 WL 8461696, at *3 (C.D. Cal. Oct. 21, 2020)

7   ("Plaintiff clearly assented to the Agreement. . . . Because Plaintiff could not have

8   purchased the relevant services unless he clicked the box that said he agreed to the

9   Agreement, he assented to it.").

10         Further, there can be no dispute plaintiff's arbitration agreements cover the

11   claims at issue here.  Plaintiff's arbitration agreements broadly cover "all Disputes

12   between you and Epson," and define "Disputes" to "have the broadest meaning

13   permissible under law," including "any dispute, claim, controversy or action

14   between you and Epson arising out of or relating to this Agreement, the Software,

15   Epson Hardware, or other transaction involving you and Epson, whether in contract,

16   warranty, misrepresentation, fraud, tort, intentional tort, statute, regulation,

17   ordinance, or any other legal or equitable basis."  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at

18   ¶ 14.1 (software license) & 2 at ¶ 22.1 (Updater EULA).  Courts analyzing

19   arbitration agreements with similar language have held it must be interpreted

20   broadly.  *See, e.g., Amirhamzeh v. Wells Fargo Bank, N.A.*, 2014 WL 12610227, at

21   *1 (N.D. Cal. Oct. 31, 2014) ("The arbitration agreement has an extremely broad

22   scope; it provides that 'any dispute' between the parties is subject to arbitration.").

23   While plaintiff's claims clearly fall within the scope of his agreements, to the extent

24   there is any question, all "doubts concerning the scope of arbitrable issues should be

25   resolved in favor of arbitration[.]"  *Moses H. Cone*, 460 U.S. at 24-25.

26

27

28

## V.  THOUGH NOT AN ISSUE FOR THE COURT, ARBITRATION MAY NOT PROCEED ON A CLASS BASIS

Because disputes regarding the interpretation of the arbitration agreements are reserved for the arbitrator, the Court need not determine whether class arbitration is permitted.  *See, e.g., Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684-85 (2010) (arbitrator made initial determination whether class arbitration was permitted under the parties' agreement).

But again, this is an issue the agreements unambiguously and enforceably resolve.  Plaintiff's agreements clearly prohibit class claims.  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA).  In *Stolt-Nielsen*, the Supreme Court held "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party *agreed* to do so."  559 U.S. at 684 (emphasis in original).  The Supreme Court has consistently enforced this precedent and has repeatedly upheld class waivers in arbitration agreements.  *See, e.g., Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018) ("[C]ourts may not allow a contract defense to reshape traditional individualized arbitration by mandating classwide arbitration procedures without the parties' consent."); *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1419 (2019) ("Courts may not infer from an ambiguous agreement that parties have consented to arbitrate on a classwide basis.").

The arbitration agreements here are clear and expressly state the parties' intentions that arbitration may not proceed on a class basis.  Arabian Decl. at ¶¶ 3, 5, Exs. 1 at ¶ 14.5 (software license) & 2 at ¶ 22.5 (Updater EULA).  "[C]ourts and arbitrators must give effect to the contractual rights and expectations of the parties." *Stolt-Nielsen*, 559 U.S. at 682 (internal quotations omitted).  Thus, arbitration may not proceed on a class basis.

**VI.    PLAINTIFF'S CLAIMS SHOULD BE STAYED PENDING RESOLUTION OF ANY ARBITRATION, AND THIS ACTION SHOULD BE STAYED PENDING A RULING ON THIS MOTION**

Under the FAA, an action compelled to arbitration shall be stayed by the district court pending resolution of the arbitration.  9 U.S.C. § 3.  *See also Mendoza v. Uber Techs. Inc.*, 2020 WL 2563047, at *2 (C.D. Cal. May 4, 2020) ("This action is STAYED pending resolution of the arbitration proceedings. The Clerk is directed to administratively close the case.").

Additionally, because this Court is not the proper forum for plaintiff's claims, Epson also seeks an order staying all proceedings pending resolution of its motion to compel arbitration (including a stay of all discovery), which would be obviated by an order sending this case to arbitration.  Plaintiff should not be permitted to ignore his arbitration agreements, file a lawsuit in federal court, and force Epson to participate in litigation in violation of the terms of the parties' agreements.  For this reason, courts routinely stay proceedings pending the resolution of a motion to compel arbitration.  *See, e.g., Mahamedi IP Law, LLP v. Paradice & Li, LLP*, 2017 WL 2727874, at *1 (N.D. Cal. Feb. 14, 2017) (granting "motion to stay discovery until the Court rules on [the] motion to compel arbitration."); *Hotel Greystone Corp. v. New York Hotel & Motel Trades Council, AFL-CIO*, 897 F. Supp. 168, 170 (S.D.N.Y. 1995) ("[P]etitioner's motion for a preliminary stay pending resolution of the petition for a stay of arbitration and respondent's cross-motion to compel is granted."); *Hamoudeh v. Unitedhealth Grp. Inc.*, 2016 WL 2894870 at *1 (E.D.N.Y. May 17, 2016) (granting "motion to stay this action pending resolution of UnitedHealth's motion to compel arbitration of Plaintiffs' claims.").

## CONCLUSION

For the foregoing reasons, plaintiff's claims should be compelled to arbitration and, to the extent plaintiff raises any defenses to arbitration of his claims, those disputes must be resolved by the arbitrator.  The action should be stayed

1   pending resolution of the arbitration and, in the interim, stayed pending resolution of

2   this motion.

3   DATED:  March 22, 2021                QUINN EMANUEL URQUHART &
                                          SULLIVAN. LLP
4

5                                         By_____/s/ Shon Morgan_____

6                                             Shon Morgan
                                              Attorneys for Defendant Epson America,
7                                             Inc.